IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

MICHAEL GOODALE,

        Defendant.

Case No. CR12-3011

REPORT AND RECOMMENDATION

---

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................ 2

II.   PROCEDURAL HISTORY ................................. 2

III.  ISSUES PRESENTED ................................... 2

IV.   RELEVANT FACTS ..................................... 3

V.    DISCUSSION ......................................... 6
    A.   Waiver of Miranda Rights ............................ 7
        1.   Was Defendant in Custody when Interviewed by Law
            Enforcement? ................................. 7
        2.   Was Defendant's Waiver of Miranda Rights Knowing and
            Voluntary? ................................... 9
    B.   Seizure of the Laptop Computer and the State Search Warrant .... 12
        1.   Did Law Enforcement Improperly Seize Defendant's Laptop
            Computer? ................................... 13
        2.   Was the Search Warrant Supported by Probable Cause? .... 15
        3.   Would the Leon Good Faith Exception Apply? .......... 17
    C.   The Federal Search Warrant ......................... 19

VI.   SUMMARY ........................................... 20

VII.  RECOMMENDATION ................................... 21

## I. INTRODUCTION

On the 3rd day of April 2012, this matter came on for hearing on the Motion to Suppress: Statement and Lap Top Computer (docket number 16) filed by the Defendant on March 25, 2012, as amended (docket number 20) on April 1, 2012. The Government was represented by Assistant United States Attorney Mark A. Tremmel. The Defendant appeared in court and was represented by his attorney, Mark R. Brown.

## II. PROCEDURAL HISTORY

On March 7, 2012, Defendant Michael Goodale was charged by Indictment with two counts of aggravated sexual abuse (Counts 1 and 2), two counts of interstate transportation of a minor with intent to engage in criminal sexual activity (Counts 3 and 4), and accessing child pornography (Count 5). Defendant entered a plea of not guilty, and trial was scheduled for May 7, 2012. On April 9, 2012, Defendant filed a Motion to Reset Trial Date. On that same date, the Court granted Defendant's motion and trial was rescheduled for June 11, 2012.

On March 25, 2012, Defendant timely filed a motion to suppress. Defendant moved to amend his motion suppress on April 1, 2012. At the commencement of the instant hearing, the Court granted that motion. On April 2, 2012, the Government timely filed its Resistance to the motion.

## III. ISSUES PRESENTED

Defendant asks the Court to suppress statements made by him to law enforcement officers on September 17, 2011. Defendant asserts that he did not knowingly and voluntarily waive his *Miranda* rights, and that his subsequent statements to officers were not made voluntarily. Defendant also asks the Court to suppress all evidence related to his laptop computer, asserting it was improperly seized. Defendant claims that both state and federal applications and affidavits for warrants to search the laptop computer lacked probable cause for issuance of a search warrant. The Government denies Defendant's claims and affirmatively asserts that the *Leon* good faith exception is applicable.

## IV. RELEVANT FACTS

In the early morning hours of September 17, 2011, Barbara Belcher, age 44, and her 13-year-old son, M.R., went to the Mason City Police Department to report allegations of sexual abuse against Defendant. Belcher and M.R. brought Defendant's laptop computer with them to the police station. When they went to the police station, Defendant was sleeping at Belcher's residence. Z.G.--M.R.'s 13-year-old friend and Defendant's nephew--was also sleeping at Belcher's residence.

Investigator Terrance Prochaska and Investigator Duane Kemna, both of the Mason City Police Department, conducted a videotaped interview with Belcher and M.R. The interview began at approximately 2:24 a.m. Belcher told the investigators that M.R. told her about "some stuff" he had found on Defendant's computer, and then told her that Defendant sexually abused him. Belcher stated that Defendant's computer was "laying around" in her residence that evening, so she checked it, and found a "history of gay porn sites."

At 2:30 a.m., while the interview was ongoing, M.R. opened the laptop and began using it. At 2:34 a.m., while questioning M.R., Prochaska slightly moved the laptop and touched the touchpad. At 2:35 a.m., M.R. used the computer to show the investigators how he found the history with "gay teen porn" in an internet search engine. At 2:40 a.m., the computer screen turned black. At 2:48 a.m., Prochaska moved the laptop and touched the touchpad to bring the computer back to life. Prochaska handled the computer and looked at the computer screen for approximately 17 seconds. At the suppression hearing, Prochaska testified that he did not remember what he saw on the computer screen, and stated that whatever was on the screen was not anything "new" from what had already been shown to him at 2:35 a.m. by M.R. The investigators continued their interview with

3

M.R., and he described how Defendant had sexually abused him, and sexually abused his friend, Z.G.[1]

Around 3:30 a.m., law enforcement went to Belcher's house seeking Defendant's consent to speak with officers at the police station. Defendant consented to go the police station. Defendant asked law enforcement why the police wanted to speak with him. Sergeant Mike Lillquist told Defendant that police wanted to talk to him about an alleged assault. After Defendant informed Lillquist that he had one drink earlier that night, at around 12:00 a.m., the police decided that it would be best if Defendant rode with Lillquist to the police station. Defendant sat in the front seat of Lillquist's patrol car on the ride to the police station.

At approximately 4:00 a.m., Investigators Prochaska and Kemna conducted a videotaped interview with Defendant. At the outset of the interview, Prochaska read Defendant his *Miranda* rights and gave him a written waiver form. After briefly reviewing the waiver form, Defendant asked Prochaska what the waiver meant. Prochaska replied that the waiver form provides that "you read the statements, you are willing to make a statement and answer questions, basically what its saying is that after you sign this its your understanding that if you talk to us that you have the right to not talk to us and saying that you can stop at anytime and call a lawyer if you need to."[2] Following Prochaska's explanation, Defendant signed the waiver form.

Next, Prochaska told Defendant that he was not under arrest, the door was unlocked, and he was free to leave at anytime. Prochaska began his questioning by asking Defendant whether he knew M.R. and Z.G. Defendant indicated that he knew both of them. Next, Prochaska inquired about Defendant's relationship with M.R. Defendant stated that he was M.R.'s mentor, and that he was like a "big brother" to M.R. Prochaska

---

[1] Belcher left the interview room at approximately 2:39 a.m.

[2] Government's Exhibit 1; Defendant's videotaped interview at 03:59.

4

asked Defendant whether he ever took M.R. on trips. Defendant replied that he had taken M.R. on trips to Adventureland, Mall of America, and the home of a relative in Minnesota. Prochaska asked Defendant whether M.R. had stayed in hotels with him. Defendant replied that he and M.R. had stayed at hotels together.

Around 4:04 a.m., Prochaska and Kemna left the interview room. They returned at approximately 4:07 a.m. Prochaska continued the interview and inquired about Defendant's sexual preference, and whether Defendant was bisexual. Defendant admitted that he was bisexual, and asked why he was being questioned about his sexual orientation. Prochaska told him that law enforcement had reason to believe that Defendant was engaging in sexual misconduct with M.R. and Z.G. Defendant told Prochaska that he thought he "better stop talking" and that it was best not to say anything to Prochaska and Kemna. Prochaska asked if Defendant wanted to make a statement, and at approximately 4:09 a.m., Defendant invoked his right to remain silent and told the investigators that he had "no statement to give at this time."[3] The investigators stopped questioning Defendant, but asked for his consent to look at his laptop computer. Defendant did not give his consent. Prochaska informed Defendant that due to exigent circumstances, the police intended to hold his computer pending a search warrant.

On September 19, 2011, Jeremy Ryal, an investigator with the Mason City Police Department, submitted an application for search warrant to a state judicial magistrate. The application sought authority to search Defendant's laptop computer. The application was supported by an affidavit signed by Ryal.[4] In the affidavit, Ryal outlined the events of September 17, 2011, when Belcher and M.R. went to the police station with Defendant's laptop and made a complaint of sexual abuse against Defendant. With regard to the laptop, Ryal stated that Belcher told investigators that the computer's internet history contained

---

[3] *Id*. at 04:09.

[4] The application, affidavit, search warrant, and return were introduced into evidence at the time of hearing as Government's Exhibit 5.

numerous gay teen porn websites. Prior to obtaining the search warrant, Ryal spoke with Belcher, who told him that she saw images of oral and anal sex acts involving boys around the ages of 13 to 16 on Defendant's computer. The judicial magistrate found probable cause to issue a search warrant for Defendant's laptop computer.

On November 22, 2011, FBI Special Agent Craig Tomlinson submitted an application for a federal search warrant to the undersigned magistrate judge. The application sought authority to search Defendant's laptop computer. The application was supported by an affidavit signed by Tomlinson.[5] Similar to the state search warrant, Tomlinson's affidavit outlined the events of September 17, 2011, including Belcher's and M.R.'s description of websites containing gay teen pornography on Defendant's laptop computer. Finding probable cause, the undersigned issued a federal search warrant for the laptop computer on November 22, 2011.

## V. DISCUSSION

In his motion to suppress, Defendant claims that he did not knowingly and voluntarily waive his *Miranda* rights, and that his subsequent statements to officers were not made voluntarily. According to Defendant, law enforcement failed to properly explain the *Miranda* warnings waiver to him, and factoring in the issue of "alcohol use . . . and his hearing impairment condition, said waiver of Miranda Rights . . . was not knowing or voluntary."[6] Defendant also argues that all evidence related to his laptop computer should be suppressed because it was improperly seized. Defendant asserts that "probable cause did not exists [*sic*] for the granting of the search warrant and that the warrant/affidavit was void of critical factors for the Judge to consider, to-wit, law enforcement's review of the

---

[5] The application, including attachments and affidavit, and search warrant were introduced into evidence at the time of hearing as Government's Exhibit 6.

[6] Memorandum in Support of Motion to Suppress Statement and Lap Top Computer (docket number 20-1) at 3; ¶ 8.

lap top pre-warrant request."[7]  The Government disputes Defendant's claims and, alternatively, argues that the search falls within the good faith exception found in *Leon*.

## A. Waiver of Miranda Rights

The Court will first address whether Defendant knowingly, voluntarily, and intelligently waived his *Miranda* rights.  It is undisputed that Defendant was read a *Miranda* warning prior to questioning.  It is also undisputed that Defendant signed the *Miranda* waiver after inquiring what the waiver meant.  *See* Government's Exhibit 2. Nevertheless, Defendant argues that his waiver of *Miranda* rights was not voluntary. Specifically, Defendant argues that his waiver was not voluntary because he "believed he was in custody" when he was taken to the police station for questioning.  Defendant also argues that his waiver was not knowing and voluntary because he received an insufficient explanation of the *Miranda* waiver from Investigator Prochaska, used alcohol prior to questioning, and has a hearing impairment.

### 1.  Was Defendant in Custody when Interviewed by Law Enforcement?

It is unclear to the Court why Defendant's belief that he was in custody at the time of his questioning has any relevance in the matter.  If Defendant was in custody at the time of questioning, then the investigators were required to give Defendant the *Miranda* warnings, which they did.  If on the other hand, Defendant was not in custody at the time of questioning, then the investigators were not required to give Defendant the *Miranda* warnings.  *See United States v. Sanchez*, ___ F.3d ___, 2012 WL 1207264 at *2-*3 (8th Cir. 2012) (providing that law enforcement must inform suspects of their Miranda rights before subjecting them to a custodial interrogation, but Miranda warnings are not required if the suspect is not in custody during a police interview).  Nevertheless, because the Government addressed the issue of custody, the Court will analyze whether Defendant was in custody at the time of his interview.

---

[7] *Id.* at 8; ¶ 27.

7

To determine whether a defendant is in custody for *Miranda* purposes, courts look to "the totality of circumstances confronting the defendant at the time of the interview, and ask[] 'whether a reasonable person in his position would consider his freedom of movement restricted to the degree associated with formal arrest.'" *United States v. Huether*, ___ F.3d ___, 2012 WL 752331 at \*3 (8th Cir. 2012) (quoting *United States v. Flores-Sandoval*, 474 F.3d 1142, 1146 (8th Cir. 2007)). In determining whether a defendant is in custody, the Eighth Circuit Court of Appeals has identified six non-exclusive factors for courts to consider:

> (1) whether the suspect was informed that he was free to leave and that answering was voluntary; (2) whether the suspect possessed freedom of movement; (3) whether the suspect initiated contact or voluntarily acquiesced; (4) whether strong arm tactics or strategies were employed; (5) whether the atmosphere was police dominated; or, (6) whether the suspect was placed under arrest at the end of questioning.

*Flores-Sandoval*, 474 F.3d at 1146-47 (citing *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)). In considering these factors, "[t]he first three indicia are mitigating factors, which, if present, mitigate against the existence of custody at the time of questioning. Conversely, the last three indicia are aggravating factors which, if present, aggravate the existence of custody." *United States v. Axsom*, 289 F.3d 496, 500-01 (8th Cir. 2002). "The inquiry is an objective one, without consideration of the participants' subjective views." *Huether*, 2012 WL 752332 at \*3.

Applying the factors to the interview with Defendant, the Court finds that: (1) Investigator Prochaska read Defendant his *Miranda* rights and had Defendant sign a waiver of those rights; (2) Prochaska told Defendant that he was not under arrest, the door was unlocked, and he was free to leave at anytime; (3) Defendant was not restrained during the interview; (4) Defendant voluntarily acquiesced to Prochaska's questioning; (5) no strong arm tactics or strategies were employed during the questioning; and (6) Defendant was not placed under arrest at the end of questioning. Furthermore,

Defendant presents no evidence that he was intoxicated or unable to hear the investigators during questioning. With regard to alcohol consumption, Defendant told law enforcement that he had one alcoholic beverage around 12:00 a.m. He was interviewed at 4:00 a.m., and showed no signs of intoxication. At the suppression hearing, Prochaska testified that he did not smell alcohol on Defendant when he interviewed him. Taking into consideration the totality of the circumstances, the Court concludes that Defendant was not in custody when he was questioned by law enforcement because a reasonable person in Defendant's position would not consider his or her freedom of movement restricted to the degree associated with formal arrest. *See Flores-Sandoval*, 474 F.3d at 1146.

Interestingly, because Defendant was not in custody at the time of his interview, it was unnecessary for law enforcement to give Defendant a *Miranda* warning. *See Sanchez*, ___ F.3d ___, 2012 WL 1207264 at \*3 (providing that *Miranda* warnings are not required for a suspect who is not in custody). Accordingly, no "waiver" is required. Nevertheless, the Court will address the arguments of the Defendant and Government on the waiver issue.

### 2. Was Defendant's Waiver of Miranda Rights Knowing and Voluntary?

To be voluntary, knowing, and intelligent, a defendant's waiver of *Miranda* rights must meet two requirements. First, the waiver must be "'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Second, the defendant must waive his or her rights with "'a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id*. In determining whether a waiver is valid, courts consider the totality of the circumstances. *Id*.

Additionally, the waiver need not be an express waiver. *Berghuis v. Thompkins*, 560 U.S. ___ (2010), 130 S. Ct. 2250, 2261 (2010). "[A] waiver of *Miranda* rights may be implied through 'the defendant's silence, coupled with an understanding of his rights

9

and a course of conduct indicating waiver.'" *Id.* (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). In other words, where it can be shown that "a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Id.* at 2262. In *Berghuis*, the United States Supreme Court concluded that:

> Although *Miranda* imposes on the police a rule that is both formalistic and practical when it prevents them from interrogating suspects without first providing them with a *Miranda* warning, it does not impose a formalistic waiver procedure that a suspect must follow to relinquish those rights. As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protections those rights afford.

*Id.* (Citations omitted.)

Here, there is no evidence that law enforcement intimidated, coerced, or deceived Defendant to get him to waive his *Miranda* rights. Indeed, Defendant agreed to be interviewed at the police station. Moreover, Defendant was told by law enforcement that he was not under arrest, the door to the interview room was unlocked, and he was free to leave at anytime. Accordingly, the Court concludes that Defendant's waiver of his *Miranda* rights was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421.

Turning to the second requirement for a knowing, voluntary, and intelligent waiver of *Miranda* rights, the record reflects that: (1) Investigator Prochaska read Defendant his Miranda rights; (2) Defendant reviewed the waiver form; (3) Defendant asked Prochaska a question about the form and received an explanatory answer[8]; (4) Defendant expressly

---

[8] When Defendant asked Prochaska what the Miranda waiver form meant, Prochaska answered that:

> you read the statements, you are willing to make a statement and answer

(continued...)

waived his rights by signing the waiver form; and (5) Defendant impliedly waived his rights by answering the investigators' questions. Moreover, Defendant clearly understood his *Miranda* rights because he invoked his rights and refused to give the investigators a statement, thereby ending the interview. Accordingly, the Court concludes that Defendant fully understood "the nature of the right being abandoned and the consequences of the decision to abandon it[,]" when he waived his *Miranda* rights.

In considering Defendant's assertions that his alcohol use and hearing impairment caused his waiver to be involuntary, the Court is unconvinced by these arguments. While Defendant admitted drinking one alcoholic beverage around 12:00 a.m., his interview was conducted around 4:00 a.m. There is no evidence that Defendant was intoxicated at the time of his interview. Defendant did not smell of alcohol, slur his words, or otherwise appear intoxicated. The Court concludes that Defendant's prior use of alcohol had no apparent effect on the "knowing and intelligent" waiver of his *Miranda* rights. *See United States v. Howard*, 532 F.3d 755, 763 (8th Cir. 2008) (to render a statement involuntary, a defendant's intoxication must cause his will to be overborne). Similarly, at the outset of the interview, Defendant mentioned that he needed the investigators to speak up because

---

[8](...continued)

> questions, basically what its saying is that after you sign this its your understanding that if you talk to us that you have the right to not talk to us and saying that you can stop at anytime and call a lawyer if you need to.

Government's Exhibit 1; Defendant's videotaped interview at 03:59. Defendant argues that Prochaska's answer "was NOT, a viable and legitimate explanation of said Miranda Warnings to this defendant, for said Warnings contain much, much, more content then, 'you can talk to us or not,' including what you say as a person can be used against you in a court of law later." Defendant's Memorandum (docket number 20-1) at 3; ¶ 8. The Court is unpersuaded by Defendant's argument. At the outset of the interview, Prochaska read Defendant his *Miranda* rights, provided him with a written copy of the rights and waiver, and asked Defendant to review the written information. Contrary to Defendant's assertion, Prochaska answered Defendant's question about the waiver by telling Defendant more than "you can talk to us or not." Prochaska also told Defendant that he had the right not to talk to law enforcement, could stop talking to law enforcement at anytime, and could call a lawyer if he needed a lawyer. Following this answer, Defendant did not ask for any further clarification or any further questions. Instead, Defendant signed the waiver form. Based on the foregoing circumstances, the Court believes Prochaska sufficiently answered Defendant's question regarding the waiver form.

he had some difficulty hearing. The investigators complied with Defendant's request, and Defendant did not mention or indicate that he had any difficulty hearing for the remainder of the interview. Therefore, the Court concludes that Defendant's hearing impairment had no apparent effect on the "knowing and intelligent" waiver of his *Miranda* rights.

In summary, after considering the totality of the circumstances, the Court concludes that Defendant's waiver of his *Miranda* rights was voluntary, knowing, and intelligent.

### B. Seizure of the Laptop Computer and the State Search Warrant

Defendant argues that all evidence related to his laptop computer should be suppressed because it was improperly seized and the search warrant for the laptop lacked probable cause. Specifically, Defendant asserts that "the computer that he had a possessory and proprietary interest in was stolen and or taken without his permission to law enforcement by B.B. & M.R. . . . While law enforcement debriefed B.B. & M.R. Investigators opened up and viewed said lap top computer in the presence of B.B. & M.R."[9] Defendant contends that the actions of Belcher, M.R., and the investigators constitutes a "pre-warrant" seizure and partial search of the laptop, and requires the seizure of the computer to "be viewed via a warrantless search."[10] Defendant also argues that the search warrant obtained by law enforcement on September 19, 2011, lacked probable cause. Specifically, Defendant asserts that:

> Upon reflection and review of the four corners of the affidavit, the defendant would allege that probable cause did not exists [sic] for the granting of the search warrant and that the warrant/affidavit was void of critical facts for the Judge to consider, to-wit, law enforcement's review of the lap top pre-warrant request.

Defendant's Memorandum (docket number 20-1) at 8; ¶ 27.

---

[9] Defendant's Memorandum (docket number 20-1) at 6; ¶ 21.

[10] *Id.* at 7; ¶ 22.

## 1. Did Law Enforcement Improperly Seize Defendant's Laptop Computer?

"The Fourth Amendment prohibits unreasonable searches and seizures. Absent some well-settled exception, unconsented warrantless searches are unreasonable." *United States v. Miller*, 152 F.3d 813, 815 (8th Cir. 1998). "The Fourth Amendment, however, does not extend to private searches that are neither instigated by nor performed on behalf of a governmental entity." *United States v. Starr*, 533 F.3d 985, 994 (8th Cir. 2008) (citation omitted). The review of materials following a private search by the government does not violate the Fourth Amendment if "the government intrusion goes no further than the private search." *Id.*; *see also Miller*, 152 F.3d at 815 (In order "to be a Fourth Amendment search, a governmental intrusion must infringe on a legitimate expectation of privacy. Because a private search frustrates such an exception, an ensuing police intrusion that stays within the limits of the private search is not a search for Fourth Amendment purposes.") (Citations omitted.)

Here, Belcher and M.R. brought Defendant's computer to the police station from Belcher's residence, where it was located and used by M.R. In his memorandum, Defendant admits that M.R. had permission to use the computer.[11] At the police station, Belcher told the investigators that M.R. brought to her attention "some stuff" he had found on Defendant's computer, and then told her that Defendant sexually abused him. Belcher stated that Defendant's computer was "laying around" in her residence that evening, so she checked it, and found a "history of gay porn sites." During the interview, M.R. opened the laptop and began using it. At 2:34 a.m., while questioning M.R., Prochaska slightly moved the laptop and touched the touchpad. At 2:35 a.m., M.R. used the computer to show the investigators how he found the history with "gay teen porn" in an internet search engine. At 2:40 a.m., the computer screen turned black. At 2:48 a.m., Prochaska moved the laptop and touched the touchpad to bring the computer back to life. Prochaska handled the computer and looked at the computer screen for approximately 17 seconds. At the

---

[11] *See* Defendant's Memorandum (docket number 20-1) at 6; ¶ 19.

suppression hearing, Prochaska testified that he did not remember what he saw on the computer screen, and stated that whatever was on the screen was not anything "new" from what had already been shown to him at 2:35 a.m. by M.R. Based on the totality of the circumstances, it is clear that law enforcement did not violate the Fourth Amendment by looking at Defendant's laptop during the interview with M.R., because the governmental intrusion went "no further than the private search." *Starr*, 533 F.3d at 994.

Following the interview with M.R., no law enforcement officers looked at Defendant's laptop until Investigator Ryal obtained the search warrant on September 19, 2011, a mere two days after the early morning interviews. Furthermore, when they interviewed Defendant, the investigators sought Defendant's consent to keep his laptop pending obtaining a search warrant. Defendant did not consent to the investigators' request. Citing probable cause and exigent circumstances, the investigators told Defendant they intended to keep his laptop pending the search warrant. Contrary to Defendant's concerns, the investigators actions were permitted under the Fourth Amendment. In *United States v. Clutter*, ___ F.3d ___, 2012 WL 987325 (8th Cir. 2012), the Eighth Circuit found that law enforcement officers could seize computers pending the issuance of a search warrant, when they determined that there was probable cause to believe that the computers contained evidence of child pornography. *Id.* at *3. *See also United States v. Place*, 462 U.S. 696, 701 (1983) ("Where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the [Fourth] Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it, or some other recognized exception to the warrant requirement is present."); *United States v. Mitchell*, 565 F.3d 1347, 1350 (11th Cir. 2009) (Providing that seizure of a computer "to ensure that the hard drive was not tampered with before a warrant was obtained" did not violate the Fourth Amendment.). The Court concludes that probable cause and exigent circumstances, i.e., information provided by

Belcher and M.R. to law enforcement that the internet history on Defendant's laptop contained child pornography, permitted the investigators to keep Defendant's computer until a search warrant could be obtained. *See Clutter*, 2012 WL 987325 at *3.

In summary, after considering the totality of the circumstances, the Court concludes that law enforcement did not improperly seize Defendant's laptop computer in violation of the Fourth Amendment.

## 2. *Was the Search Warrant Supported by Probable Cause?*

The Fourth Amendment to the United States Constitution protects persons and their houses against unreasonable searches and seizures. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. AMEND. IV. In making a probable cause determination, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Stated otherwise:

> If an affidavit in support of a Search Warrant "sets forth sufficient facts to lead a prudent person to believe that there is a 'fair probability that contraband or evidence of a crime will be found in a particular place,'" probable cause to issue the warrant has been established.

*United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *United States v. Warford*, 439 F.3d 836, 841 (8th Cir. 2006)). Probable cause "is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 577 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). As such, the Court examines the sufficiency of a search warrant affidavit using a "common sense" and not a "hypertechnical" approach. *Grant*, 490 F.3d at 632 (citing *United States v. Solomon*,

15

432 F.3d 824, 827 (8th Cir. 2005)). The totality of the circumstances is considered in determining whether probable cause was established to issue a search warrant. *Id.* at 631 (citation omitted).

When, as here, an issuing judge relies solely on the written application to issue a search warrant, "'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Solomon*, 432 F.3d 824, 827 (quoting *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999), in turn quoting *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)); *see also United States v. Olvey*, 437 F.3d 804, 807 (8th Cir. 2006) ("Where there is no evidentiary hearing before the magistrate judge, the probable cause determination must be based upon 'only that information which is found within the four corners of the affidavit.'" (quotations omitted)); *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982) ("[A]t the time the warrant was applied for, the issuing magistrate relied solely on the affidavit which was presented to him, and that no evidence was adduced before the magistrate. In these circumstances, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.").

Here, the four corners of the affidavit contained information obtained from Belcher and M.R. during the September 17, 2011 interview with Investigators Prochaska and Kemna, including seeing gay teen porn websites in the history of the internet browser and finding numerous gay pornography websites in the internet history. The affidavit also contained information from a phone conversation Investigator Ryal had with Belcher on September 19, 2011. In that conversation, Belcher told Ryal that she saw images of oral and anal sex acts involving boys around the ages of 13 to 16 on Defendant's computer. In applying a totality of the circumstances analysis, the state judicial magistrate made a practical, common-sense decision that there was a fair probability that evidence of a crime could be found on Defendant's laptop computer. *Gates*, 462 U.S. at 238. I believe the

state court magistrate had a substantial basis for reaching that conclusion. *Id.* at 238-39 ("the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for concluding' that probable cause existed") (citing *Jones v. United States*, 362 U.S. 257, 271 (1960)). Accordingly, I respectfully recommend that the district court reject Defendant's argument that the search warrant of September 19, 2011 lacked probable cause.

### 3.    *Would the Leon Good Faith Exception Apply?*

The Government also argues that the good faith exception found in *United States v. Leon*, 468 U.S. 897 (1984), is applicable in this case. For the reasons set forth above, I believe that it is unnecessary for the district court to address the good faith exception, since there existed probable cause for the search warrant. Nonetheless, I will address the issue in case the district court disagrees with my analysis on probable cause.

The good faith exception provides that disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant. *Leon*, 468 U.S. at 922. The Government may not rely on the good faith exception, however, if one of four circumstances are present.

> The Supreme Court has identified four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid.

*Grant*, 490 F.3d at 632-633 (citing *Leon*, 468 U.S. at 923).

Defendant did not file a written reply to the Government's argument that the good faith exception in *Leon* applies to the September 19, 2011 search warrant for Defendant's laptop computer. Considering the four exceptions to the good faith exception, the Court believes that circumstances 1, 2, and 4 are inapplicable. There is no assertion by Defendant or evidence in the record that: (1) The affidavit in support of the search warrant included any false statements that could mislead the judge; (2) the judicial magistrate "wholly abandoned his judicial role" in issuing the search warrant; or (3) the warrant was "so facially deficient" that Ryal would believe the warrant was not valid.[12]

Turning to circumstance 3, when assessing the good faith of a police officer who executed a warrant, courts look to the totality of the circumstances, "'including any information known to the officers but not presented to the issuing judge.'" *United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007) (quoting *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001)). Here, Investigator Ryal consulted with Investigators Prochaska and Kemna, and learned that Belcher and M.R. told Prochaska and Kemna that they saw gay teen porn websites in the history of the internet browser and found numerous gay pornography websites in the internet history of Defendant's computer. Ryal spoke with Belcher, who told him that she saw images of oral and anal sex acts involving boys around the ages of 13 to 16 on Defendant's computer. With this information, an application for search warrant was prepared and submitted to a state magistrate judge. After reviewing the application, the judicial magistrate found probable cause and issued a search warrant.

I believe that Investigator Ryal relied in good faith on the magistrate's determination that there was probable cause to issue a warrant. Furthermore, I believe that his good faith reliance on the validity of the search warrant was objectively reasonable.[13] Accordingly,

---

[12] "A warrant is facially deficient if it lacks detail as to the place to be searched or the objects to be found." *United States v. Guzman*, 507 F.3d 681, 686 (8th Cir. 2007). Here, Defendant offers no evidence that the search warrant lacked specificity as to the search of Defendant's laptop computer.

[13] "Ordinarily, a police officer cannot be expected to question a judge's probable cause
(continued...)

even *if* the district court finds that probable cause was lacking for the issuance of the search warrant on September 19, 2011, the search warrant nonetheless falls within the good faith exception found in *Leon*.[14]

## C. The Federal Search Warrant

In his Amendment to: Motion to Suppress: Statement and Lap Top Computer (docket number 20), Defendant submits:

> Counsel did not address the federal search warrant, for common sense would dictate, that the federal warrant, to a large degree must be built upon the prior State Search Warrant, in the humble opinion of defense counsel.
>
> Counsel would argue that if indeed the Court finds legal flaws via the State Search Warrant, these flaws must carry over to the federal warrant, for the State Warrant, was indeed the groundwork for the later federal search warrant via the computer in question. Thus, defense counsel amends the prior motion to suppress, to include and incorporate all such arguments to application of the State and Federal Search Warrants, involved in this case.

Defendant's Amendment to Motion to Suppress (docket number 20) at 1; ¶¶ 2, 3. In his memorandum in support of the motion to suppress, attached to the amendment to the motion to suppress, Defendant provides no argument with regard to the federal search warrant. Apparently, as Defendant stated in his amendment to the motion to suppress, he is simply incorporating the arguments of the state warrant application to the federal search

---

[13](...continued)
determination." *United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991).

[14] The issues of probable cause and the good faith exception may be addressed by the district court in either order. That is, if the district court finds that probable cause existed for the issuance of the search warrant, then it need not address the *Leon* issue. On the other hand, if the district court concludes that the *Leon* good faith exception is applicable, then it need not address the issue of whether the search warrant is supported by probable cause. *See, e.g., United States v. Pruett*, 501 F.3d 976, 979 (8th Cir. 2007) ("If the District Court was correct in concluding that the *Leon* good-faith exception to the exclusionary rule applies, it is unnecessary for us to engage in a probable-cause analysis."); *United States v. Ross*, 487 F.3d 1120, 1122 (8th Cir. 2007); *United States v. Puckett*, 466 F.3d 626, 629 (8th Cir. 2006).

warrant application. Therefore, because the Court concluded that no constitutional violations occurred with regard to the state search warrant, the Court also believes that the federal search warrant was supported by probable cause.[15] Furthermore, as discussed in section *V.B.3*, even *if* the district court finds that probable cause was lacking for the issuance of the federal search warrant on November 22, 2011, the search warrant nonetheless falls within the good faith exception found in *Leon*.

## VI. SUMMARY

In summary, the Court concludes that Defendant was not in custody when he was questioned by law enforcement because a reasonable person in Defendant's position would not consider his or her freedom of movement restricted to the degree associated with formal arrest. *See Flores-Sandoval*, 474 F.3d at 1146. The Court also concludes that Defendant understood his *Miranda* rights, and he voluntarily waived those rights. Defendant's waiver of his *Miranda* rights was "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Vinton*, 631 F.3d at 483. I believe that Defendant had "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* The Court further concludes that law enforcement did not improperly seize Defendant's laptop computer in violation of the Fourth Amendment. *See Place*, 462 U.S. at 701. Additionally, I believe that both the state and federal the search warrant applications would lead a prudent person to believe that there was a "fair probability that contraband or evidence of a crime" could be found on Defendant's laptop computer. *Grant*, 490 F.3d at 631. In considering the totality of

---

[15] Similar to the state search warrant, the affidavit attached to the federal search warrant application outlined the events of September 17, 2011, including Belcher's and M.R.'s discussion of internet history with websites containing gay teen pornography on Defendant's laptop computer. Additionally, the affidavit contained information from a later interview with M.R. by Child Protection Services, where M.R. stated that Defendant had shown him pictures of "gay boys naked" on Defendant's computer. In applying a totality of the circumstances analysis, I made a practical, common-sense decision that there was a fair probability that evidence of a crime could be found on Defendant's laptop computer. *Gates*, 462 U.S. at 238. Therefore, Defendant's argument that the federal search warrant lacked probable cause should be rejected.

the circumstances, both the state judicial magistrate and I properly found probable cause to support the issuance of the state search warrant on September 19, 2011, and the federal search warrant on November 22, 2011. *Gates*, 462 U.S. at 238. Even *if* probable cause was otherwise lacking, however, law enforcement acted in good faith on our determination that there was probable cause to issue the warrants, and that reliance was objectively reasonable. *Leon*, 468 U.S. at 922. Therefore, Defendant's motion to suppress should be denied.

## *VII. RECOMMENDATION*

For the reasons set forth above, I respectfully **RECOMMEND** that the Motion to Suppress Statement and Lap Top Computer (docket number 16) filed by Defendant, as amended on April 1, 2012 (docket number 20), be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on April 3, 2012.*

DATED this ___19th___ day of April, 2012.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA